**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | § § § § § § § § § § § § § | |
| *Plaintiff*, | | Civil Action No. 6:20-00957-ADA<br>Civil Action No. 6:20-00958-ADA |
| v. | | JURY TRIAL DEMANDED |
| ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., | | |
| *Defendant*. | | |

**PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF (GROUP II PATENTS)**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.  INTRODUCTION ..................................................................................................... 1

II. U.S. PATENT NO. 8,712,708 ("THE '708 PATENT) ............................................. 2

    A.    Background ..................................................................................................... 2

    B.    Agreed-Upon Constructions .......................................................................... 3

    C.    Disputed Terms .............................................................................................. 3

        1.    "detect[ing] […] an availability of a charger adapter" ('708 Patent, Claims 1, 14, and 15) ............................................................ 3

III. U.S. PATENT NO. 9,231,746 ("THE '746 PATENT") ........................................... 5

    A.    Background ..................................................................................................... 5

    B.    Agreed-Upon Constructions .......................................................................... 5

    C.    Disputed Terms .............................................................................................. 5

        1.    "an importance of parts of channel information for the link adaptation" ('746 Patent, Claims 1 and 11) ............................................. 5

            a.    "Importance" Has Its Plain and Ordinary Meaning in the Context of the Intrinsic Record ....................................................... 6

            b.    "Importance" Is Not Indefinite in the Context of the Patent ......... 8

        2.    "a lower importance with respect to link adaption than said at least one part" ('746 Patent, Claim 2) ............................................... 11

            a.    "Importance" Has Its Plain and Ordinary Meaning And Is Not Indefinite ................................................................................ 12

        3.    "a coding level of said multi-level coding" / "coding level" ('746 Patent, Claims 1, 2, 3, and 11) ................................................. 13

            a.    The "Coding Level" Claim Terms Have Their Plain and Ordinary Meanings ..................................................................... 13

IV. CONCLUSION ........................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BMC Software, Inc. v. ServiceNow, Inc.*,
   No. 2:14-cv-903, 2015 WL 4776970 (E.D. Tex. Aug. 13, 2015) ............................................. 9

*Crane Co. v. Sandenvendo Am., Inc.*,
   No. 2:08-cv-42. 2009 WL 1586704 (E.D. Tex. June 5, 2009) ............................................... 10

*Datamize, LLC v. Plumtree Software, Inc.*,
   417 F.3d 1342 (Fed. Cir. 2005) ........................................................................................ 9, 10

*Free Stream Media Corp v. Alphonso Inc.*,
   996 F.3d 1355 (Fed. Cir. 2021) ........................................................................................... 15

*Free Stream Media Corp. v. Alphonso Inc.*,
   No. 2:15-cv-1725, 2017 WL 1165578 (E.D. Tex. Mar. 29, 2017) ........................................ 15

*Halliburton Energy Servs., Inc., v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008) ...................................................................................... 10, 11

*Northrop Grumman Corp. v. Intel Corp.*,
   325 F.3d 1346 (Fed. Cir. 2003) ........................................................................................... 15

*Uniloc 2017 LLC v. Google LLC*,
   No. 2:18-cv-492, 2020 WL 569858 (E.D. Tex. Feb. 5, 2020) ................................................ 9

*Uniloc 2017 LLC v. Samsung Elecs, Am., Inc.*,
   No. 2:18-cv-506, 2020 WL 248880 (E.D. Tex. Jan. 16, 2020) ............................................ 10

*Versata Software, Inc. v. Zoho Corp.*,
   213 F. Supp. 3d 829, 837-38 (W.D. Tex. 2016) .................................................................. 11

**I.     INTRODUCTION**

Plaintiff WSOU Investments, LLC (d/b/a Brazos Licensing and Development) ("WSOU") submits this brief in support of its proposed constructions for the disputed claim terms of U.S. Patent Nos. 8,712,708 ("the '708 patent") and 9,231,746 ("the '746 patent"), and in response to Defendant OnePlus's opening claim construction brief concerning these patents (Dkt. 31).

WSOU respectfully submits that none of the four[1] categories of disputed claim terms of these patents actually needs to be construed because their plain and ordinary meanings apply. For two of the terms, OnePlus urges this Court to adopt narrower constructions than the plain and ordinary meanings, while OnePlus contends that the other two terms (both of which include the word "importance") are indefinite. The Court should reject OnePlus's proposed construction and indefiniteness positions.

With respect to the phrase "detect[ing] […] an availability of a charger adapter" in the '708 patent, OnePlus seeks to rewrite the claim language apparently to suit its litigation needs and to include non-limiting exemplary language in the construction. There is no basis to rewrite the claim language to something narrower than the plain and ordinary meaning or include non-limiting language. *See infra* § II.C.1.

With respect to the "importance" claim phrases in the '746 patent, contrary to OnePlus's position, a person of ordinary skill in the art would be able to discern objectively from the claims and patent specification what "importance" means in the context of the asserted claims. As discussed in greater detail below, the patent specification provides sufficient guidance for assigning greater or lesser importance to parts of channel information for link adaptation to work correctly, such that the more important parts of the channel information are prioritized to transmit

---

[1] WSOU has consented to OnePlus's proposed construction for "assigning" / "assigned" in the '746 patent. *See infra* § III.B.

1

more reliably, leading to more reliable link adaptation. OnePlus's arguments to the contrary ignore the context of the claims and specification and misapply the case law. *See infra* § III.C.1.-2.

Finally, with respect to the "coding level" claim terms in the '746 patent, the Court should reject OnePlus's proposal to rewrite the claim language to mean a "distinct detection probability level." While the patent discloses that a coding level "corresponds to" or "allows for" a detection probability level, the patent also makes clear that a "coding level" is not the same thing as a "detection probability level." *See infra* § III.C.3.

## II. U.S. PATENT NO. 8,712,708 ("THE '708 PATENT)

### A. Background

The '708 patent relates to methods, apparatuses, and computer programs for estimating the remaining charging time of a rechargeable battery. *See* Ex. A[2] at Abstract. As summarized in Figure 5, the invention generally involves detecting an availability of a charger adapter, then determining whether a battery charging point is in a constant current phase or in a constant voltage phase, and then, based on that determination, performing a calculating of the time remaining to charge:

---

[2] References herein to Exs. A-E refer to the corresponding exhibits that OnePlus submitted with its opening brief (Dkt. 31).



**FIG. 5**

*Id.* at Fig. 5.

WSOU is asserting against OnePlus claims 1, 2, 4-7, and 14-16, of which claim 1 (drawn to a method), claim 14 (drawn to a non-transitory computer readable medium, comprising program instructions), and claim 15 (drawn to an apparatus) are independent claims.

B.  **Agreed-Upon Constructions**

Any claim terms of the '708 patent that are not disputed during Markman proceedings should be given their plain and ordinary meaning.

C.  **Disputed Terms**

1.  **"detect[ing] […] an availability of a charger adapter" ('708 Patent, Claims 1, 14, and 15)**

| WSOU's Proposed Construction | OnePlus's Proposed Construction |
|---|---|
| Plain and ordinary meaning; or, if the Court deems a construction is necessary: "detect[ing] […] a presence of a charger adapter" | "detecting energy, e.g., voltage and/or current, for charging from an adapter" |

The Court need not construe the phrase "detect[ing] […] an availability of a charger

3

adapter," which has its plain and ordinary meaning. A person of ordinary skill in the art would understand detecting an availability of a charger adapter to refer to detecting the adapter's presence.

The Court should reject OnePlus's proposal to adopt a construction narrower than the plain and ordinary meaning. OnePlus proposes to restrict the step of detecting of an availability of charger adapter to detecting energy for charging from an adapter. The '708 patent, however, does not restrict the way a charger adapter may be detected, let alone limit it to "detecting energy, e.g., voltage and/or current, for charging from an adapter," as OnePlus proposes. A charger adapter may be detected without specifically detecting the "energy (e.g., voltage and/or current)" for charging from the adapter.

OnePlus's narrower proposed construction is not based on the inventors acting as their own lexicographers through an express definition in the specification, nor is it based on alleged disavowal of claim scope in the specification or during prosecution. Rather, OnePlus seeks to rewrite the claim language apparently to suit its litigation needs. To justify its proposed construction, OnePlus points to claims 5 and 6, which depend from the method of claim 1 and further comprise "identifying, by the apparatus, a correct category of the charger adapter after detecting its availability[.]" Dkt. 31 at 4. OnePlus argues that these claims and portions of the specification "confirm that 'detecting an availability of a charger adapter' is distinct from identifying the category of the charger adapter." *Id*. at 4-5. Whether those actions are distinct or not is beside the point, and does not justify OnePlus's proposal. Contrary to OnePlus's contention, it does not follow from "identifying … a correct category of the charger adapter after detecting its availability" that detecting the charger adapter must be done by "detecting energy, e.g., voltage and/or current, for charging from an adapter."

4

OnePlus also fails to offer any reason to insert its proposed non-limiting exemplary language—"e.g., voltage and/or current"—into the construction of the disputed claim phrase.

## III.  U.S. PATENT NO. 9,231,746 ("THE '746 PATENT")

### A.  Background

The '746 patent relates to a method and a transmitting device for transmitting channel information for link adaptation of a radio channel in a wireless network. *See* Ex. B at Abstract. The method and device generally involve (a) encoding channel information using multi-level coding that combines multiple bit sequences that correspond to coding levels and (b) assigning a coding level to a part of the channel information so that it corresponds to the bit sequence of the coding level, wherein the channel information is subdivided into multiple parts according to an importance of the parts of channel information for link adaptation, and the coding levels are assigned to at least one part of the multiple parts. *See, e.g., id*. at claims 1, 11.

WSOU is asserting against OnePlus claims 1-4 and 11, of which claim 1 (drawn to a method) and claim 11 (drawn to transmitting device) are independent claims.

### B.  Agreed-Upon Constructions

Any claim terms of the '746 patent that are not disputed during Markman proceedings should be given their plain and ordinary meaning. In addition, WSOU consents to OnePlus's proposed construction for "assigning" / "assigned" in claims 1, 2, 3, and 11 of the '746 patent.

### C.  Disputed Terms

**1.  "an importance of parts of channel information for the link adaptation" ('746 Patent, Claims 1 and 11)**

| WSOU's Proposed Construction | OnePlus's Proposed Construction |
|---|---|
| Plain and ordinary meaning; or, if the Court deems a construction is necessary: "a priority of parts of channel information for the link adaptation" | Indefinite |

5

### a. "Importance" Has Its Plain and Ordinary Meaning in the Context of the Intrinsic Record

Both claims 1 and 11 of the '746 patent recite the phrase "an importance of parts of channel information for the link adoption." Claim 1 reads as follows:

> 1. A method of transmitting channel information for link adaptation of a radio channel in a wireless network, the method comprising:
> encoding the channel information using multi-level coding, said multi-level coding comprising combining multiple bit sequences, each bit sequence corresponding to a coding level of said multi-level coding; and
> assigning one of said coding levels to at least a part of the channel information such that the at least a part of the channel information corresponds to the bit sequence of that coding level;
> wherein the method comprises subdividing the channel information into multiple parts of channel information according to ***an importance of parts of channel information for the link adaptation*** and assigning one of said coding levels to at least one part of said multiple parts.

Ex. B at claim 1 (disputed language emphasized). Claim 11 reads as follows:

> 11. A transmitting device including:
> A memory with executable instructions stored thereon; and
> A processor configured to access said memory to execute said executable instructions and to:
> encode the channel information using multi-level coding, said multi-level coding comprising combining multiple bit sequences, each bit sequence corresponding to a coding level of said multi-level coding; and
> assign one of said coding levels to at least a part of the channel information such that the at least a part of the channel information corresponds to the bit sequence of that coding level;
> wherein the transmitting device is further configured to subdivide the channel information into multiple parts of channel information according to ***an importance of parts of channel information for the link adaptation*** and assign one of said coding levels to at least one part of said multiple parts.

Ex. B at claim 11 (disputed language emphasized).

A person of ordinary skill in the art would understand the plain and ordinary meaning of the disputed phrase to have objective meaning in the contexts of claims 1 and 11, and to refer to a

6

priority of parts of channel information for the link adaptation. The specification consistently discloses that the "importance" of the channel information part is determined based on whether the particular channel information needs to be transmitted reliably for the link adaptation to work correctly.

For example, the patent specification states that "a part of the link information that is important for the link adaptation to work correctly may be assigned to a coding level having a rather high detection probability. This part of the channel information will be transmitted very reliably. The important part of the channel information being transmitted reliably leads to a reliable link adaptation." Ex. B at 2:38-43. The specification further explains that "[p]referably, … the parts of the channel information are prioritised by assigning to them different coding levels having different detection probability levels," and provides the following guidance:

- "Important parts have a high detection probability and can be regenerated by a receiver even in case of high noise or strong interference on the radio channel."

- "Less important parts have a lower detection probability than the important parts. Consequently, a receiver may not be able to detect the less important parts in all situations. However, transmitting the less important parts using a coding level with lower detection probability consumes less transmission resources and still improves the overall channel information in many cases."

- "Following this so-called 'best effort' principle, the important parts of the channel information can be transmitted reliably without affecting the efficiency of the transmission of the whole channel information."

*Id*. at 2:44-65.

The specification also provides examples of how to implement such a system using a

"prioritizing element" that classifies parts of channel information by assigning coding levels according to the importance of the parts to for link adaptation, such that "the important parts of the channel information CI are regenerated quite reliably by the decoder 27 and thus the probability of transmission errors can be kept low for those important parts of the CI, even in the presence of fading, noise and interference." *Id*. at 7:15-8:25.  In another example, "a high priority having a high detection probability level is assigned to wideband channel information … related to the whole radio channel[,]" whereas "[a] lower priority having a lower detection probability level is assigned to sub-band information that is specific to a certain sub-band of that radio channel." *Id*. at 8:40-48.

A person of ordinary skill in the art would understand from the patent's guidance that the more reliably a part of the channel information needs to be transmitted for link adaptation to work correctly, the more "important" the information is for purposes of the claimed invention and the more it should be prioritized during transmission.  Parts of the channel information that are determined to be most necessary to be detected at the receiver have highest importance, whereas less necessary parts have lower importance.

### b. "Importance" Is Not Indefinite in the Context of the Patent

In light of the ample guidance in the specification, OnePlus cannot establish by clear and convincing evidence that claims 1 and 11 are indefinite.  Contrary to OnePlus's contention, the disputed claim phrase does not require "a subjective determination of importance." Dkt. 31 at 7-11.  Rather, as discussed above, the specification consistently explains that parts of channel information are to be prioritized based on their importance to getting the link adaptation to work correctly.  Such prioritization is an objective technical determination in light of the given circumstances.  Whether the coding is assigned dynamically, statically, or otherwise (*see* Dkt. 31 at 9-10) does not change this conclusion.

In similar situations, district courts have found the claim term "importance" not to be indefinite. For example, in *Uniloc 2017 LLC v. Google LLC*, No. 2:18-cv-492, 2020 WL 569858 (E.D. Tex. Feb. 5, 2020), the court found that the term importance was not invalid where "the term is used consistently in the claims and is intended to have the same general meaning in each claim" and "the term 'importance,' when read in light of the specification delineating the patent and the prosecution history, informs, with reasonable certainty, those skilled in the art about the scope of the invention." *Id*. at *5. The claims in *Uniloc v. Google* required "assigning an importance" to an element of the claim (motion vectors) and then taking certain actions "based on the importance." *Id*. The specification there disclosed that "the term 'importance' indicates whether a motion vector is likely to be lost during transmission." *Id*. So, too, here. Claims 1 and 11 of the '746 patent instruct that certain action be taken based on a determination of "importance" assigned to an element of the claim (parts of channel information) and use the term "importance" consistently with one another and the specification, which provides guidance to those skilled in the art for determining whether parts of channel information are important for getting the link adaptation to work correctly.

Similarly, in *BMC Software, Inc. v. ServiceNow, Inc.*, No. 2:14-cv-903, 2015 WL 4776970 (E.D. Tex. Aug. 13, 2015), the district court rejected the defendant's indefiniteness defense to claims that required taking certain actions based on a determination of "importance." *Id*. at *9, *47-48. In so ruling, the court found that the term "importance" was "used consistently in the claims and is intended to have the same meaning in each claim," and noted that the specification provided guidance for making the "importance" determination. *Id*. at *48.

The case law cited by OnePlus is inapposite. In *Datamize*, the patent's claim recited an "aesthetically pleasing look and feel," but the specification failed to provide any standard or

9

guidance for making such a determination. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348-53 (Fed. Cir. 2005). The claim language was indefinite because it was "completely dependent on a person's subjective opinion" (*id*. at 1350), which is a far cry from making a technical determination of importance based on achieving proper link adaptation.

Similarly, in *Crane*, the patent claimed the term "rapidly" (in the phrase "to rapidly and smoothly remove and carry a selected … product"), but without providing any guidance whatsoever in the specification about how fast "rapidly" was. *Crane Co. v. Sandenvendo Am., Inc.*, No. 2:07-cv-42. 2009 WL 1586704, at *13 (E.D. Tex. June 5, 2009). As discussed, the '746 patent provides those skilled in the art with ample guidance for determining the "importance" of a channel information part as recited in the claims.

OnePlus's reliance on *Uniloc v. Samsung* is also misplaced. The "importance" claim in that case is not "analogous" to the claims in this case, as OnePlus asserts. Dkt. 31 at 8. There, claim 8 required an operator to select the "important subject matter" within an image, but the plaintiff admitted that "the importance of the subject matter is subjectively determined by the broadcaster 'to maintain the artistic values of the original image,'" and the specification provided "no objective guidance … to determine whether the operator has succeeded in doing so." *Uniloc 2017 LLC v. Samsung Elecs, Am., Inc.*, No. 2:18-cv-506, 2020 WL 248880, at *19 (E.D. Tex. Jan. 16, 2020). The claims of the '746 patent, in contrast, do not require any subjective artistic determination, but instead are supported by the objective guidance in the specification.

The remainder of OnePlus's arguments mainly pertain to how one might go about showing infringement of claims 1 and 8. Relying on *Haliburton* and *Versata*, OnePlus argues that the claim term "importance" makes it impossible to make a consistent assessment of infringement because what is "important" can change. Dkt. 31 at 10-11. But the issue in *Halliburton* was that the claim

concerned a "fragile gel" that was supposedly capable of suspending drill cuttings, and it was "ambiguous as to whether an upper bound of fragileness is contemplated, and … ambiguous as to its requisite ability to suspend drill cuttings." *Halliburton Energy Servs., Inc., v. M-I LLC*, 514 F.3d 1244, 1256 (Fed. Cir. 2008) (holding claim term indefinite because it was "ambiguous as to the requisite degree of the fragileness of the gel, the ability of the gel to suspend drill cuttings (i.e., gel strength), and/or some combination of the two"). Similarly, in *Versata*, the problem was that the patent failed to describe the "outer boundaries" of the term "space-constrained display" or "to establish any boundary enabling a skilled artisan to distinguish between a display that is space constrained from one that is not." *Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 3d 829, 837-38 (W.D. Tex. 2016). Unlike in *Halliburton* and *Versata*, the '746 patent provides those skilled in the art with sufficient guidance for determine the relative degree of "importance" between parts of channel information for link adaptation, and there is no ambiguity by which "a given embodiment would simultaneously infringe or not infringe the claims." Dkt. 31 at 10 (quoting *Halliburton*, 514 F.3d at 1254-55).

For these reasons, OnePlus cannot establish by clear and convincing evidence that "importance" in claims 1 and 11 of the '746 patent is indefinite, and the Court should adopt the plain and ordinary meaning of the disputed claim phrase.

### 2. "a lower importance with respect to link adaption than said at least one part" ('746 Patent, Claim 2)

| WSOU's Proposed Construction | OnePlus's Proposed Construction |
|---|---|
| Plain and ordinary meaning;<br><br>or, if the Court deems a construction is necessary: "a lower priority with respect to link adaption than said at least one part" | Indefinite |

### a. "Importance" Has Its Plain and Ordinary Meaning And Is Not Indefinite

For the same reasons set forth above for the "importance" claim phrase in claims 1 and 11, the Court should adopt the plain and ordinary meaning for the claim phrase "a lower importance with respect to link adaption than said at least one part" in claim 2 of the '746 patent, and reject OnePlus's indefinite argument. In its opening brief, OnePlus reiterates and incorporates by reference its previous arguments for claims 1 and 11, which are meritless for the reasons already discussed.

As discussed above, the '746 patent provides those skilled in the art with sufficient guidance to determine objectively whether a part of channel information is of higher or lower importance for link adaptation. As just one example, column 2 of the specification states:

> Assigning the at least a part of the channel information to the predefined coding level allows for controlling the detection probability, i.e. a quality of the transmission of the channel information. Choosing an appropriate coding level therefore reduces the risk of distorting the channel information while transferring it, e.g. from a terminal of the network to a base station of the network, and thus improves the reliability of the transmission of the channel information. *Choosing an appropriate coding level also allows to prioritise channel information of different relevance. For instance, a robust coding level (i.e., high detection rate) can be assigned to essential channel information while a less-robust coding level is chosen for channel information that is less important*.

Ex. B at 2:18-30. Column 2 further states that "the parts of the channel information are *prioritised by assigning to them different coding levels having different detection probability levels*. Important parts have a high detection probability and can be regenerated by a receiver even in case of high noise or strong interference on the radio channel. *Less important parts have a lower detection probability than the important parts*. Consequently, a receiver may not be able to detect the less important parts in all situations." Ex. B at 2:50-58 (emphases added). Thus, the parts of

12

the channel information that are less essential to the link adaptation's reliable functionality are generally served at "best-effort" levels and are not always detected at the receiver. *Id*. at 2:58-65.

Based on the claims and specification, a person of ordinary skill in the art would be able to make an objective determination of the relative importance of different parts of the channel information. Claim 2 is not indefinite.

### 3. "a coding level of said multi-level coding" / "coding level" ('746 Patent, Claims 1, 2, 3, and 11)

| WSOU's Proposed Construction | OnePlus's Proposed Construction |
|---|---|
| Plain and ordinary meaning; or, if the Court deems a construction is necessary: "a coding level of said multi-level coding" / "coding level" | "a distinct detection probability level" |

#### a. The "Coding Level" Claim Terms Have Their Plain and Ordinary Meanings

The Court should adopt the plain and ordinary meanings of the "coding level" claim phrases in claims 1-3 and 11 of the '746 patent, and reject OnePlus's proposal that would improperly deem a "coding level" the same as a "detection probability level."

The '746 patent does not indicate that a "coding level" means "a distinct detection probability level," as OnePlus contends. The specification states that "[p]referably, each coding level *corresponds to* a level of a detection probability of the bit sequence of that coding level." Ex. B at 2:9-14 (emphasis added); *see also id.* at 2:18-21 ("Assigning the at least a part of the channel information to the predefined coding level *allows for* controlling the detection probability, *i.e.* a quality of the transmission of the channel information." (emphasis added)). Claim 1, for example, calls for, among other things, "encoding the channel information using multi-level coding, said multi-level coding comprising combining multiple bit sequences, *each bit sequence corresponding to a coding level of said multi-level coding*." *See, e.g., id*. at claim 1 (emphasis

13

added). Thus, the patent specification and independent claim disclose that each coding level can *correspond to* or *allow for* a level of detection probability of the bit sequence of the coding level. The patent does not, however, state that the coding level is the same thing as a detection probability level.

To the contrary, column 7 of the patent specification further discloses an example in which "[t]he prioritizing element **37** classifies the channel information CI by assigning coding level **0**, … , n of a multi-level code to them. The coding level **0**, … , n are assigned to the parts $ci_1$, $ci_2$ according to an importance of these parts $ci_1$, $ci_2$ for the link adaptation performed by the base station **15**. *For each coding level 0, … , n, the prioritizing element 37, generates a bit sequence $c_1, c_2, … c_n$.* Each generated bit sequence $c_1, c_2, … , c_n$ corresponds to the part $ci_1$, $ci_2$ of channel information CI to which the coding level of that bit sequence c1 c2, . . . , c, has been assigned. *Each coding-level 0, ... , n corresponds to a detection probability level $p_1, p_2, ... , p_n$.*" *Id*. at 7:38-48 (emphases added). Thus, the patent specification discloses a coding level "0, … , n" bit sequence as "$c_1, c_2, . . . . , c_n$" and a detection probability level as "$p_1, p_2, … , p_n$"—showing that they are not the same thing.

WSOU is not seeking to "enlarge what is patented beyond what the inventor has described as the invention," as OnePlus suggests. Dkt. 31 at 15. Rather, WSOU seeks to maintain the clear, express language of the claims—"coding level"—which the patent indicates is a different thing than the "detection probability level." OnePlus's reliance on *Abbott* and *Howmedica* (Dkt. 31 at 15) is misplaced because OnePlus's proposed construction is not necessary for the claimed subject matter to achieve the patent's goals. And regardless of whether "the patent's stated goal" is to "adapt the detection probability to the importance of Channel Information," as OnePlus contends (Dkt. 31 at 15), OnePlus offers no explanation as to why the express claim language of

"coding level" needs further clarification or modification. *See, e.g., Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1355 (Fed. Cir. 2003) (reversing district court's claim construction that relied on one of the specification's stated "objects of the invention" without a clear disclaimer of particular subject matter).

OnePlus's proposed construction is not necessary to avoid "eviscerating" the term "multi-level coding," as OnePlus contends. Dkt. 31 at 15-16. The claims require "multi-level coding" regardless of the construction of "coding level." OnePlus's reliance on *Free Stream Media Corp v. Alphonso Inc.*, 996 F.3d 1355, 1367 (Fed. Cir. 2021), is misplaced. There, the Court's concern was that the term "communication session" should specifically not cover one-way communication, and should be limited to two-way communication, because the patent only contemplated two-way communication for the specifically claimed embodiment and used the word "session" only to refer to two-way communication, but used an entirely different word to refer to one-way communication. *Id.* ("The district court also added that including 'one-way' in the construction would improperly read 'session' out of the claims, because Samba's construction would then encompass any 'communication.' *Id*. We agree."); *see also Free Stream Media Corp. v. Alphonso Inc.*, No. 2:15-cv-1725, 2017 WL 1165578, at *10-11 (E.D. Tex. Mar. 29, 2017) ("Contrary to Plaintiff's suggestion, the specification never describes the 'one-way communication' as a 'communication session' between the networked device and the client device. Instead, … Figures 5 and 6 relate to the 'gathering the primary data' claim element, which is a different than 'automatically establishing a communication session.'"). Here, however, there is no inconsistency between WSOU's proposal and the patent specification that would cause the plain and ordinary meaning of "coding level" to effectively read out any other element of the claims. Rather, OnePlus is seeking to replace the term "coding level" with a

different term ("distinct detection probability level").

## IV. CONCLUSION

WSOU respectfully requests that the Court adopt its proposed constructions and reject each of OnePlus's indefiniteness arguments.

Dated:  September 14, 2021            RESPECTFULLY SUBMITTED,

By: */s/ Jonathan K. Waldrop*
Jonathan K. Waldrop (CA Bar No. 297903)
(Admitted in this District)
jwaldrop@kasowitz.com
Darcy L. Jones (CA Bar No. 309474)
(Admitted in this District)
djones@kasowitz.com
Marcus A. Barber (CA Bar No. 307361)
(Admitted in this District)
mbarber@kasowitz.com
John W. Downing (CA Bar No. 252850)
(Admitted in this District)
jdowning@kasowitz.com
Heather S. Kim (CA Bar No. 277686)
(Admitted in this District)
hkim@kasowitz.com
Jack Shaw (CA Bar No. 309382)
(Admitted in this District)
jshaw@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5096

Mark D. Siegmund (TX Bar No. 24117055)
mark@waltfairpllc.com
**LAW FIRM OF WALT FAIR, PLLC**
1508 N. Valley Mills Drive
Waco, TX 76710
Telephone:  (254) 772-6400
Facsimile:   (254) 772-6432

**Attorneys for Plaintiff
WSOU INVESTMENTS, LLC d/b/a
BRAZOS LICENSING AND
DEVELOPMENT**

16

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on September 14, 2021, pursuant to Local Rule CV-5, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all parties who have appeared in this case.

*/s/ Jonathan K. Waldrop*
**Jonathan K. Waldrop**
