IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WSOU Investments LLC<br>doing business as<br>Brazos Licensing and Development,<br><br>     Plaintiffs,<br><br>v.<br><br>OnePlus Technology (Shenzhen) Co., Ltd.,<br><br>     Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:20-cv-00957-ADA<br>Civil Action No. 6:20-cv-00958-ADA<br><br>Jury Trial Demanded |

**DEFENDANT'S REPLY CLAIM CONSTRUCTION BRIEF (GROUP 2 PATENTS)**

## TABLE OF CONTENTS

                                                                          Page

I.   INTRODUCTION ............................................................................................................. 1

II.   U.S. PATENT NO. 8,712,708 ("THE '708 PATENT") ..................................................... 1

   A.   Disputed Terms of the '708 Patent ......................................................................... 1

      1.   "detect[ing] [. . .] an availability of a charger adapter" (claims 1, 14, 15) .............................................................................................................. 1

III.   U.S. PATENT NO. 9,231,746 ("THE '746 PATENT") ..................................................... 4

   A.   Agreed Construction for the '746 Patent ................................................................ 4

   B.   Disputed Terms of the '746 Patent ......................................................................... 4

      1.   "an importance of parts of channel information for the link adaptation" (claim 1, 11) ............................................................................ 4

      2.   "a lower importance with respect to link adaptation than said at least one part" (claim 2) ................................................................................ 7

      3.   "a coding level of said multi-level coding" / "coding level" (claims 1, 2, 3, 11) ............................................................................................................ 8

IV.   CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Lab'ys v. Sandoz, Inc.*,
    566 F.3d 1282 (Fed. Cir. 2009)..................................................................................................9

*Atlas IP, LLC v. Medtronic, Inc.*,
    809 F.3d 599 ..............................................................................................................................2

*Biogen, Inc. v. Berlex Labs., Inc.*,
    318 F.3d 1132, 1140 (Fed. Cir. 2003)........................................................................................9

*BMC Software, Inc. v. ServiceNow, Inc.*,
    No. 2:14-cv-903, 2015 WL 4776970 (E.D. Tex. Aug. 13, 2015)...............................................6

*Crane Co. v. Sandenvendo Am., Inc.*,
    No. 2:07-CV-42-CE, 2009 WL 1586704 (E.D. Tex. June 5, 2009) ..........................................7

*Free Stream Media Corp. v. Alphonso Inc.*,
    996 F.3d 1355 (Fed. Cir. 2021)............................................................................................9, 10

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244, 1256 (Fed. Cir. 2008),......................................................................................4

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
    822 F. 3d 1312 (Fed. Cir. 2016).................................................................................................8

*Microsoft Corp. v. International Trade Com'n*,
    731 F.3d 1354 (Fed. Cir. 2013)..................................................................................................3

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)..............................................................................................2, 9

*Uniloc 2017 LLC v. Samsung Elecs, Am., Inc.*,
    No. 2:18-cv-506, 2020 WL 248880 (E.D. Tex. Jan. 16, 2020) .................................................6

*Uniloc v. Google*
    2020 WL 569858, (E.D. Tex. 2020) ......................................................................................5, 6

*Versata Software, Inc. v. Zoho Corp.*
    213 F. Supp. 3d 829, 837 (W.D. Tex. 2016)..............................................................................5

*WSOU Investments LLC v. Microsoft Corporation*,
    6-20-cv-00456-ADA, Dkt. 62 (W.D. Tex. Mar. 23, 2021).........................................................3

I.  **INTRODUCTION**

Defendant OnePlus Technology (Shenzhen) Co., Ltd. ("Defendant" or "OnePlus") hereby submits its reply claim construction brief addressing the disputed claim terms for the Group 2 patents.[1]

Despite initially opposing, WSOU now consents to OnePlus's proposed construction for "assigning" / "assigned" of the '746 Patent. Pl.'s Resp. Br. at 1 n.1. With respect to the disputed phrase "detect[ing] [. . .] an availability of a charger adapter" in the '708 Patent, WSOU does not dispute that OnePlus's proposed construction "detecting energy, e.g., voltage and/or current, for charging from an adapter" *is* "detect[ing] [. . .] an availability of a charger adapter." With respect to each of the disputed terms in the '746 Patent, WSOU fails to justify its positions, relying instead on inapposite case law and teachings of the specification not relevant to the terms or disputes. Where it has no response to OnePlus's arguments, WSOU either dismisses them with conclusory assertions or simply ignores them altogether.

II.  **U.S. PATENT NO. 8,712,708 ("THE '708 PATENT")**

   A.  **Disputed Terms of the '708 Patent**

       1.  **"detect[ing] [. . .] an availability of a charger adapter" (claims 1, 14, 15)**

| OnePlus's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| "detecting energy, e.g., voltage and/or current, for charging from an adapter." | Plain and ordinary meaning; or, if the Court deems a construction is necessary: <br> "detect[ing] [. . .] a presence of a charger adapter" |

WSOU argues that no construction of this phrase is necessary despite confirming that the parties disagree about its meaning. WSOU asserts no construction is needed because a skilled artisan "would understand detecting an availability of a charger adapter to refer to detecting the

---

[1] U.S. Patent No. 8,712,708 ("the '708 Patent") asserted in Case No. 6:20-cv-00957-ADA and U.S. Patent No. 9,231,746 ("the '746 Patent") asserted in Case No. 6:20-cv-958-ADA.

adapter's presence."  Plaintiff's Responsive Claim Construction Brief (Group II Patents) ("Pl.'s Resp. Br.") at 3-4.  But the claim requires "detecting *an availability* of the charger adapter," and not merely its *presence*.  Just because an adapter is present does not mean it is "available" for charging.  Detecting availability requires detecting energy for charging from the adapter as reflected in OnePlus's proposed construction.  The Court should resolve this dispute.  *See, e.g., O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

WSOU's brief fails to explain what its proposed construction requires and cites no intrinsic or extrinsic evidence supporting it.  WSOU is presumably advancing a vague construction, untethered from the patent, so that it can broadly assert this limitation against functionalities not contemplated by the patent.  For example, WSOU may try to rely on its interpretation to argue it is sufficient to detect whether the charger adapter is just somewhere nearby the apparatus in order to confirm its "presence."  Under this overly broad interpretation, this limitation would be met regardless whether the charger adapter is even connected to the apparatus, is plugged in, and is functioning properly so that it is *available* to provide energy for charging.  This is inconsistent with the patent and other language of the claims which is directed to calculating a time remaining to charge.  This charging requires the adapter to actually provide energy to the device—its "presence" alone is not enough.

WSOU wrongly accuses OnePlus of attempting to narrow the scope of this limitation.  But OnePlus's proposed construction simply clarifies how this limitation would be understood by a skilled artisan in view of the claims and specification and will ensure the jury understands that detecting a charger adapter's availability means detecting energy from the adapter.  *Atlas IP,*

2

*LLC v. Medtronic, Inc.*, 809 F.3d 599, 605 ("[T]he specification particularly, but also the prosecution history, informs the determination of claim meaning in context, including by resolving ambiguities.") (internal quotes and citations omitted); *Microsoft Corp. v. International Trade Com'n*, 731 F.3d 1354, 1360 (Fed. Cir. 2013) (finding "the term 'state' is so general on its face that it begs for clarification from the specification regarding what aspect of the resource is to be identified"). This clarification is justified because there is no dispute between the parties that detecting energy, *e.g.*, voltage and/or current, results in detecting the charger adapter's availability for charging.[2] And, as WSOU's response confirms, there is nothing else that detecting a charger adapter's availability could reasonably refer to in the context of the '708 Patent other than detecting energy from the adapter. *See* Pl.'s Resp. Br. at 3-5 (WSOU identifying no alternative ways for detecting a charger adapter's availability apart from detecting its output energy).

Finally, the Court should adopt OnePlus's proposed exemplary language—"*e.g.*, voltage and/or current"—because it is non-limiting and will be helpful to the trier of fact to better understand the proposed construction. *WSOU Investments LLC v. Microsoft Corporation*, 6-20-cv-00456-ADA, Dkt. 62 at 2 (W.D. Tex. Mar. 23, 2021) (construing "presentity" as "an entity **(*e.g.*, person, group of people, service (*e.g.*, software application or data), device or equipment (*e.g.*, computer, fax machine or copy machine) and a facility (*e.g.*, a room, an office or a building)[)]** that has associated presence state **(*e.g.*, on the phone, hotel room has been cleaned, etc.[)]**") (emphasis added).

---

[2] The specification teaches that "charger adapter 50" provides a "DC voltage up to a maximum current" and connects to the device via voltage supply lines. '708 Patent, 3:10-11; 4:18-19. Thus, the charger adapter's availability is detected by the energy that it outputs over these supply lines to the device.

3

**III.    U.S. PATENT NO. 9,231,746 ("THE '746 PATENT")**

    **A.    Agreed Construction for the '746 Patent**

Despite initially opposing, WSOU now agrees with OnePlus that "assigning" / "assigned" in claims 1, 2, 3, and 11 means "designating" / "designated."  Pl.'s Resp. Br. at 1 n.1.

    **B.    Disputed Terms of the '746 Patent**

        **1.    "an importance of parts of channel information for the link adaptation" (claim 1, 11)**

| OnePlus's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning; <br><br> or, if the Court deems a construction is necessary: "a priority of parts of channel information for the link adaptation" |

This limitation is indefinite because it requires a subjective determination of which parts of channel information are more important than others.  It is analogous to the terms found indefinite in *Halliburton* and *Versata*.

Indeed, WSOU fails to meaningfully distinguish *Halliburton* and *Versata*, offering only conclusory assertions that the '746 Patent is different because it provides "sufficient guidance," and "there is no ambiguity" about what infringes.  Pl.'s Resp. Br. at 10-11.  But WSOU's conclusory assertions identify no meaningful differences between the "importance" limitation here and the terms found indefinite in those cases.  For example, just like the term "fragile gel" in *Halliburton*, where "it is ambiguous as to the requisite degree of the fragileness of the gel," 514 F.3d 1244, 1256 (Fed. Cir. 2008), the term "importance" in the '746 Patent is also ambiguous as to what "parts of channel information" are of sufficient and relative "importance" to satisfy the limitation.  Indeed, as explained in OnePlus's opening brief, the '746 Patent provides no guidance for a skilled artisan to make an objective determination about the relative importance of channel information.  Def.'s Br. at 8-9.  The importance of channel information,

4

for example, may vary depending on whether a user is interested in higher speed versus more stable data transfer. *Id.* at 9. The user's preference is, quite simply, a subjective choice that will then dictate what is and is not important.

Similarly, just like the term "space-constrained display" in *Versata*, where the patent in dispute "fail[s] to establish any boundary enabling a skilled artisan to distinguish between a display that is spaced constrained from one that is not," 213 F. Supp. 3d 829, 837 (W.D. Tex. 2016), the '746 Patent also fails to provide any boundaries enabling a skilled artisan to determine whether the way a given device prioritizes parts of channel information satisfies the "importance" limitation. As OnePlus explained in its opening brief, a skilled artisan cannot make this determination because whether a part of the channel information is more important than other parts of the channel information will vary not only based on the user's preferences, but also based on the particular environment in which the device is being used at a given time. Def.'s Br. at 10-11. There are no set and objective boundaries set forth in the '746 Patent for a skilled artisan to follow to determine whether a device satisfies the "importance" limitation.

WSOU's attempt at summarizing the purported "guidance" provided by the '746 Patent confirms that meaningful guidance is entirely lacking. Each of the examples cited in WSOU's brief merely describes what can be done with channel information *after* its "importance" has somehow already been determined. *See* Pl.'s Resp. Br. at 7 (WSOU quoting specification's teachings that "[i]mportant parts have a high detection probability," while "[l]ess important parts have a lower detection probability," but nothing as to how the importance of those parts was initially determined). WSOU's specification cites are simply irrelevant to this claim construction dispute.

WSOU's reliance on *Uniloc v. Google* is also misplaced. In the *Uniloc v. Google* case,

5

the term "importance" in the asserted patented was construed as "whether a motion vector is likely to be lost during transmission." 2020 WL 569858, at *5-6 (E.D. Tex. 2020). Because the likelihood of a motion vector being lost during transmission could be objectively determined, the Court found the claim definite. In contrast, in the '746 Patent, the claimed process first requires determining importance using subjective, not objective criteria, and then coding the important information to reduce the risk it will be lost in transmission. *See* Pl.'s Resp. Br. at 7. This is the reverse of *Uniloc v. Google*, where importance was first determined using objective criteria and there was a basis to find the claims definite.

Here, there are simply no analogous grounds on which to find the claims definite. The portion of the specification cited by WSOU merely describes the information as "important for the link adaptation to work correctly." *Id.* It is left entirely to a skilled artisan to subjectively determine *which* parts of channel information are "important for the link adaptation to work correctly."[3] What information is important for link adaption to "work correctly" depends on the user's *subjective* goals (*e.g.*, adapting link for higher speed, but lower reliability, transmission or adapting link for higher reliability, but lower-speed, transmission) and the *context* (information will be more or less important for link adaption to "work correctly" to achieve the user's subjective goals depending on location and environmental conditions).

WSOU's reliance on the "prioritizing element" mentioned in the '746 Patent fails to support its position because the recited "prioritizing element" does not itself determine "an

---

[3] Unlike the term "importance" in *BMC Software, Inc. v. ServiceNow, Inc.*, No. 2:14-cv-903, 2015 WL 4776970 (E.D. Tex. Aug. 13, 2015), the specification in the '746 Patent does not provide sufficient guidance for making the objective "importance" determination. Similarly, although the disputed phrase does not involve an "artistic" determination (*see Uniloc 2017 LLC v. Samsung Elecs, Am., Inc.*, No. 2:18-cv-506, 2020 WL 248880 (E.D. Tex. Jan. 16, 2020)), it does require a subjective determination of importance, and needs one to act on the "importance" of "parts of channel information."

importance of parts of channel information," but rather uses this determination to assign "coding levels" to parts of channel information "according to an importance of these parts." *See* '746 Patent, 7:38-43. Even assuming, arguendo, the "prioritizing element" could determine the "importance" of these parts, there is still no teaching of any way to objectively make this determination.[4]

### 2. "a lower importance with respect to link adaptation than said at least one part" (claim 2)

| OnePlus's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning; or, if the Court deems a construction is necessary: "a lower priority with respect to link adaptation than said at least one part" |

WSOU repeats the same mistake as discussed in the previous section. The portions of the specification cited by WSOU are not relevant for construing the disputed phrase because, contrary to what WSOU has asserted, they do not teach how "an importance of parts of channel information" can be objectively determined; rather, they describe what should be done *after* the "importance of parts of channel information" *has already been* determined (*e.g.*, "assigning different coding levels having different detection probability levels").[5] Thus, determining a

---

[4] In *Crane*, the Court found that, absent an objective method (*e.g.*, "a comparison method or a quantifiable method for measuring rate of time") for measuring rate of time, the term "rapidly" is "entirely subjective and is judged purely from the consumer's standpoint" and, therefore, "[not] amenable to construction." *Crane Co. v. Sandenvendo Am., Inc.*, No. 2:07-CV-42-CE, 2009 WL 1586704, at *13 (E.D. Tex. June 5, 2009). Similarly, as discussed above, the '746 Patent specification does not provide an objective method for measuring "an importance of parts of channel information." Therefore, the term "importance" is entirely subjective and not amenable to construction.

[5] For example, one of the cited portions of the specification recites: "For instance, a robust coding level (*i.e.*, high detection rate) can be *assigned to essential channel information* while a less-robust coding level is **chosen for channel information that is less important**." '746 Patent, 2:27-30. These coding levels are "assigned" or "chosen" only after the channel information has been determined to be more or less important.

7

"lower importance" as required in claim 2 is indefinite for the same reasons described above for the phrase "an importance of parts of channel information for the link adaptation" in claims 1 and 11.

### 3. "a coding level of said multi-level coding" / "coding level" (claims 1, 2, 3, 11)

| OnePlus's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| "a distinct detection probability level" | Plain and ordinary meaning; <br><br> or, if the Court deems a construction is necessary: "a coding level of said multi-level coding" / "coding level" |

WSOU does not dispute that claim terms should be interpreted consistently with the specification where the embodiments "are the only instances in which the patent specifies how to achieve the [patent's] goals … [and] every description and every figure in the patent that discusses the issue." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F. 3d 1312, 1321 (Fed. Cir. 2016). Here, however, WSOU argues that "OnePlus's proposed construction is not necessary for the claimed subject matter to achieve the patent's goals." Pl.'s Resp. Br. at 14. To the contrary, the patent's stated goal is to "adapt the detection probability to the importance of C[hannel] I[nformation]" ('746 Patent, Abstract) and to "reliably and efficiently transfer the channel information between different network nodes." '746 Patent, 1:36-40. WSOU does not dispute this is the objective of the claimed invention. And the specification makes clear that this objective is achieved by assigning channel information to coding levels each with a distinct detection probability level. *Id.*, 2:51-53; *see also id.*, 7:37-39. WSOU has not identified anywhere in the specification that teaches prioritizing channel information in any way other than by assigning a coding level corresponding to a distinct detection probability level.

WSOU disputes whether "the express claim language of 'coding level' needs further

8

clarification or modification." Pl.'s Resp. Br. at 14-15.[6] But if the claimed "coding levels" referred to any categorization based on any conceivable criteria, as WSOU contends, then this multi-level coding would not accomplish the goals of the invention and would be rendered meaningless. Indeed, there would be no point to "subdividing" information based on importance to channel adaption and assigning coding levels based on this importance, if the coding levels were unrelated to the probability that the information will be detected. The claimed invention would no longer "adapt the detection probably to the importance of C[hannel] I[nformation]." '746 Patent, Abstract. As OnePlus's opening brief explained, "a construction of 'coding levels' that is not tied to distinct detection probability levels would effectively eviscerate the 'multilevel coding' limitation." Def's Br. at 15. This is because, as mentioned above, coding levels in the '746 Patent are associated *only* with detection probability levels. *See Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1367 (Fed. Cir. 2021) (finding that the term "communication session" must be limited to two-way communication (*i.e.*, excluding one-way communication) because the specification *only* teaches two-way communication in the context of "communication session").

WSOU's reliance on *Northrop* is misplaced. Unlike the '746 Patent, the patent in *Northrop* expressly disclosed having multiple objectives with respect to the disputed limitation. The Court noted that "the provision of a bus interface unit capable of being operated in either a

---

[6] The Court should also reject WSOU's request that the Court decline to construe this limitation because this would leave unresolved the parties' dispute over the meaning and scope of this limitation. *See O2 Micro*, 521 F.3d at 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."); *see also Abbott Lab'ys v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) (quoting *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1140 (Fed. Cir. 2003)) ("[T]he claims cannot 'enlarge what is patented beyond what the inventor has described as the invention.'")

9

bus controller or a remote terminal mode" is "merely [] **one of several objectives** that can be achieved through use of the invention." 325 F.3d 1346, 1355 (Fed. Cir. 2003). The patent at issue in *Northrop* also taught, in addition to the command/response protocol, "how to implement those other [bus interface] protocols in its inventive system." *Id.* at 1356. The patent in *Northrop* stands in stark contrast to the '746 Patent. As discussed, the '746 Patent's stated goal with respect to this limitation is to "adapt the detection probability to the importance of C[hannel] I[information]." '746 Patent, Abstract. And the specification teaches only one way to achieve this goal—assign channel information a coding level with a distinct detection probability level.

In order to argue that the coding level does not correspond to a detection probability level, WSOU cites multiple portions of the specification (*see* Pl.'s Resp. Br. at 14), each of which confirms OnePlus's position that the coding levels refer to distinct detection probability levels. For example, Figure 2 supports OnePlus's construction because it, like many passages throughout the patent, confirms that the "channel information subparts" (*e.g.*, $ci_1$) are each assigned a code level (*e.g.*, $c_1$) with a distinct detection probability level (*e.g.*, $p_1$). Nowhere does the patent describe a code level that is not tied to a distinct detection probability level, and WSOU does not contend otherwise. OnePlus's construction that confirms this correlation should be adopted, while WSOU's construction that tries to refute it should be rejected.

## IV.   CONCLUSION

For the foregoing reasons, the Court should adopt OnePlus's proposed claim constructions.

| | |
|---|---|
| Dated: September 28, 2021 | /s/   *Michael J. Lyons* <br> Michael J. Lyons* <br> California Bar No. 202284 <br> michael.lyons@morganlewis.com <br> Ahren C. Hsu-Hoffman <br> Texas Bar No. 24053269 <br> Ahren.hsu-hoffman@morganlewis.com <br> Jacob J.O. Minne* <br> California Bar No. 294570 <br> jacob.minne@morganlewis.com <br> **MORGAN, LEWIS & BOCKIUS LLP** <br> 1400 Page Mill Road <br> Palo Alto, CA 94304 <br> T: 650.843.4000 <br> F: 650.843.4001 <br><br> Elizabeth M. Chiaviello <br> Texas Bar. No. 24088913 <br> elizabeth.chiaviello@morganlewis.com <br> **MORGAN, LEWIS & BOCKIUS LLP** <br> 1717 Main Street, Suite 3200 <br> Dallas, TX 75201 <br> T: 214.466.4000 <br> F: 214.466.4001 <br><br> *Admitted pro hac vice* <br><br> ***Attorneys for Defendant OnePlus Technology (Shenzhen) Co. Ltd.*** |

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on September 28, 2021, a true and correct copy of the foregoing document was served via ECF on counsel of record per Local Rule CV-5.

                                                */s/ Michael J. Lyons*
                                                Michael J. Lyons