**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, <br><br> Plaintiff, <br><br> v. <br><br> ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., <br><br> Defendant. | CIVIL ACTION 6:20-cv-00957-ADA <br> CIVIL ACTION 6:20-cv-00958-ADA <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO
SPECIAL MASTER'S REPORT AND RECOMMENDATION
REGARDING CLAIM CONSTRUCTION
<u>(GROUP II PATENTS)</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. ii

TABLE OF ABBREVIATIONS ........................................................................................... iii

I.   INTRODUCTION ...................................................................................................... 1

II.  BACKGROUND ......................................................................................................... 1

    A.   Relevant Claim Limitations ............................................................................ 1

    B.   The Special Master's Recommendations ....................................................... 3

        1.   "Importance" Claim Terms .................................................................. 3

        2.   "Coding Level" Claim Term ................................................................ 4

III. ARGUMENT ............................................................................................................... 5

    A.   The "Importance" Claim Terms Are Not Indefinite ................................... 5

    B.   "Coding Level" Has the Plain and Ordinary Meaning Recommended by the Special Master ........................................................................................................ 11

IV.  CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
566 F.3d 1282 (Fed. Cir. 2009) ............................................................................................... 14

*Crane Co. v. Sandenvendo Am., Inc.*,
No. 2:07-cv-42, 2009 WL 1586704 (E.D. Tex. June 5, 2009) ................................................. 8

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005) ........................................................................................ 7, 8, 9

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) ............................................................................................... 13

*Halliburton Energy Servs., Inc., v. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008) ......................................................................................... 10, 11

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
822 F.3d 1312 (Fed. Cir. 2016) ............................................................................................... 13

*Northrop Grumman Corp. v. Intel Corp.*,
325 F.3d 1346 (Fed. Cir. 2003) ............................................................................................... 13

*SIPCO, LLC v. Emerson Electric Co.*,
939 F.3d 1301 (Fed. Cir. 2019) ............................................................................................... 12

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
844 F.3d 1370 (Fed. Cir. 2017) ................................................................................................. 5

*Thorner v. Sony Computer Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ............................................................................................... 13

*Uniloc 2017 LLC v. Google LLC*,
No. 2:18-cv-492, 2020 WL 569858 (E.D. Tex. Feb. 5, 2020) ........................................... 9, 10

*Uniloc 2017 LLC v. Samsung Elecs., Am., Inc.*,
No. 2:18-cv-506, 2020 WL 248880 (E.D. Tex. Jan. 16, 2020) ........................................... 8, 9

*Versata Software, Inc. v. Zoho Corp.*,
213 F. Supp. 3d 829 (W.D. Tex. 2016) ............................................................................. 10, 11

**Statutes**

35 U.S.C. § 112, ¶ 2 .................................................................................................................... 5

35 U.S.C. § 112, ¶ 6 ................................................................................................... 2, 9, 10, 13

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| "Plaintiff" or "Brazos" | Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development |
| "Defendant" or "OnePlus" | Defendant OnePlus Technology (Shenzhen) Co., Ltd. |
| "the '746 patent" | U.S. Patent Nos. 7,477,746 (Dkt. 98-4) |
| "POSITA" | Person of ordinary skill in the art |

I.      INTRODUCTION

Plaintiff Brazos responds to Defendant OnePlus's Objections to Special Master's Report and Recommendation Regarding Claim Construction (Group II Patents) (C.A. No. 6:20-cv-958, Dkt. 97) in which OnePlus objects to the Special Master's recommendations regarding the constructions of the three disputed claim terms of the '746 patent.[1]

First, with respect to the two "importance" claim terms, the Special Master correctly concluded that OnePlus had failed to meet its heavy burden of establishing indefiniteness by clear and convincing evidence.  D.I. 91 at 49.  As the Special Master astutely noted, the guidance in the intrinsic record provides "objective meaning" to the "importance" of parts of channel information, tying it to the need to transmit the information reliably to allow for proper link adaptation.  *Id*. at 47-49.

Second, the Special Master properly adopted the plain and ordinary meaning of the claim term "coding level" and rejected OnePlus's attempt to import an unsupported "distinct probability level" requirement into the claims.  Dkt. 91 at 56-58.  The Special Master correctly found that the patent refers to "coding levels" and "probability levels" as "separate things" that do not necessarily have a "1:1 correlation" and rightly recommended Brazos's proposed construction.  *Id*.

II.     BACKGROUND

        A.      Relevant Claim Limitations

Each of asserted claims 1, 2, and 11 of the '746 patent expressly recites "importance" and "coding level" limitations.  '746 patent at claims 1, 2, 11.  Asserted claim 3 also expressly recites

---

[1] Unless otherwise indicated, all docket citations herein refer to docket entries in Civil Action No. 6:20-cv-00958, in light of the fact that Defendant's objections concern only the patent at issue in that action (*i.e.*, the '746 patent), and not the patent at issue in Civil Action No. 6:20-cv-00957.

a "coding level" limitation.  *Id*. at claim 3.

The independent claims recite either a "method of transmitting channel information for link adaptation of a radio channel in a wireless network" (claim 1), or a configured "transmitting device" (claim 11), involving (a) "encoding the channel information using multi-level coding, said multi-level coding comprising combining multiple bit sequences, each bit sequence corresponding to a ***coding level*** of said multi-level coding"; and (b) "assigning one of said ***coding levels*** to at least a part of the channel information such that the at least a part of the channel information corresponds to the bit sequence of that ***coding level***."  *Id*. at claims 1, 11 (emphases added).  The claimed method or configured transmitting device further involve "subdividing the channel information into multiple parts of channel information according to an ***importance*** of parts of channel information for the link adaptation and assigning one of said ***coding levels*** to at least one part of said multiple parts."  *Id*. (emphases added).

Dependent claim 2 recites the "method according to claim 1, wherein the method comprises assigning multiple ***coding levels*** to multiple parts of the channel information, a detection probability of the ***coding level*** assigned to at least one of said multiple parts being higher than the detection probability of the ***coding level*** assigned to any further part of said multiple parts having a lower ***importance*** with respect to link adaptation than said at least one part."  *Id*. at claim 2 (emphases added).

Dependent claim 3 recites the "method according to claim 1, wherein the at least one ***coding level*** is assigned dynamically to the at least one part of channel information according to a momentary importance of parts of channel information in the link adaptation."  *Id*. at claim 3 (emphasis added).

B.      The Special Master's Recommendations

1.      "Importance" Claim Terms

After considering the parties' competing proposals and arguments, the Special Master

concluded that OnePlus had "not carried their burden of clear-and-convincing evidence that a

POSA would not understand the meaning of this term with reasonable certainty" and adopted the

plain and ordinary meaning of the "importance" claim terms:

| Claim Term | Brazos's Proposal | OnePlus's Proposal | Special Master's Recommendation |
|---|---|---|---|
| **"an importance of parts of channel information for the link adaptation"** (Claims 1, 11) | Plain and ordinary meaning; or, if the Court deems a construction is necessary: "a priority of parts of channel information for the link adaptation" | Indefinite | Plain and ordinary meaning |
| **"a lower importance with respect to link adaption than said at least one part"** (Claim 2) | Plain and ordinary meaning; or, if the Court deems a construction is necessary: "a lower priority with respect to link adaption than said at least one part" | Indefinite | Plain and ordinary meaning |

Dkt. 91 at 49, 63.

In so concluding, the Special Master recognized that the intrinsic record provides

sufficient "guidance" associating the "importance" of parts of channel information with the need

to transmit the information reliably to allow for proper link adaptation, thereby allowing a

POSITA to discern "an objective meaning for the scope of the term[,] as the factors for reliable

link adaptation can be objectively determined."  *Id*. at 47-48 (discussing '746 patent at 2:23-43).

In light of the intrinsic record's guidance, the Special Master rejected OnePlus's contention that

"the 'importance' improperly depends on the subjective perception of the user," and noted that

3

OnePlus's indefiniteness position was problematically premised on elements that "the claim language does not require" or that "a POSITA would be able to do" based on the patent's guidance. *Id.* at 48-49.

### 2. "Coding Level" Claim Term

After considering the parties' competing proposals and arguments, the Special Master agreed with Brazos that the "coding level" claim term had its plain and ordinary meaning and adopted Brazos's updated proposal regarding what that plain and ordinary meaning is:

| Claim Term | Brazos's Proposal | OnePlus's Proposal | Special Master's Recommendation |
|---|---|---|---|
| **"a coding level of said multilevel coding" / "coding level"** (Claims 1, 2, 3, 11) | Original Proposal Plain and ordinary meaning; or, if the Court deems a construction is necessary: ""a coding level of said multilevel coding" / "coding level" | Original Proposal "a distinct detection probability level" | Plain-and-ordinary meaning wherein the plain-and-ordinary meaning is "a parameter that could, but does not necessarily, correlate to a detection probability." |
| | Updated Proposal "coding level" = "a parameter that could, but does not necessarily, correlate to a detection probability" | Updated Proposal Plain and ordinary meaning, wherein each "coding level" has a distinct detection probability" | |

Dkt. 91 at 55-58, 63.

The Special Master rejected OnePlus's original proposed construction ("a distinct detection probability level") for multiple reasons, including that:

- OnePlus did not make any lexicography or disclaimer arguments that could potentially overcome the presumption that the term's plain and ordinary meaning applies;

- OnePlus improperly sought to "limit[] the scope of the claim term to [a] disclosed

embodiment[]" in the specification in which "there is 1:1 correlation between code levels and distinct probability levels," even though "the specification did not purport to limit the invention to only a 1:1 correlation"; and

- OnePlus's proposal wrongly "erase[d] th[e] difference" between "coding levels" and "detection probability levels," which "the specification discloses … are two separate things."

*Id*. at 55-56.

In adopting Brazos's updated proposal and rejecting OnePlus's updated proposal regarding the plain and ordinary meaning of "coding level," the Special Master noted that "the specification does not purport to limit the invention to only a 1:1 correlation" between a coding level and detection probability.  *Id*. at 58.

## III.     ARGUMENT

### A.     The "Importance" Claim Terms Are Not Indefinite

The Court should adopt the Special Master's recommendations regarding the "importance" claim terms and similarly reject OnePlus's indefiniteness arguments.  The definiteness requirement of 35 U.S.C. § 112, ¶ 2 requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty."  *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) (quoting *Nautilus v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2129 (2014)). The Special Master correctly found that "a POSITA would be reasonably certain that 'importance' is based on the need to transmit reliably" in light of the guidance in the intrinsic record tying "importance" to reliable transmission for link adaptation.  Dkt. 91 at 47-48 (discussing '746 patent at 2:38-43).

OnePlus bore the heavy burden of proving indefiniteness by clear and convincing evidence, and the Special Master correctly found that OnePlus failed to satisfy this standard. Dkt. 91 at 48 ("[T]he undersigned did not find Defendant's reasons to be persuasive enough to meet the standard of clear-and-convincing evidence."). Indeed, despite this heightened standard of proof, OnePlus did not proffer any expert opinions to establish the knowledge or understanding of a POSITA and instead relied only on attorney *ipse dixit*, mischaracterizations of the intrinsic record, and inapt case law to try to establish the purported subjective or uncertain nature of the "importance" limitations. The Special Master rightly recognized the deficiencies in OnePlus's infiniteness arguments and evidence. *Id*. at 48-49. Nothing in OnePlus's objections submission meets the clear and convincing evidence standard or changes how the "importance" claim terms should be construed.

The Special Master properly rejected OnePlus's arguments that the "importance" claim limitations are subjective and ambiguous. Dkt 91 at 47-48. As explained in Brazos's claim construction briefing, the intrinsic record provides a POSITA with sufficient guidance to objectively determine the "importance" of channel information parts based on priority for reliable link adaptation. *See* Dkt. 33 at 6-8; Dkt. 45 at 3-4. In that regard, the specification discloses that such "importance" is determined based on whether the particular channel information needs to be transmitted reliably for the link adaptation to work correctly. For example, the specification states that "a part of the link information that is important for the link adaptation to work correctly may be assigned to a coding level having a rather high detection probability. This part of the channel information will be transmitted very reliably. The important part of the channel information being transmitted reliably leads to a reliable link adaptation." '746 patent at 2:38-43.

The specification further explains that "[p]referably, … the parts of the channel information are prioritised by assigning to them different coding levels having different detection probability levels," and provides the following guidance:

- "Important parts have a high detection probability and can be regenerated by a receiver even in case of high noise or strong interference on the radio channel."

- "Less important parts have a lower detection probability than the important parts. Consequently, a receiver may not be able to detect the less important parts in all situations. However, transmitting the less important parts using a coding level with lower detection probability consumes less transmission resources and still improves the overall channel information in many cases."

- "Following this so-called 'best effort' principle, the important parts of the channel information can be transmitted reliably without affecting the efficiency of the transmission of the whole channel information."

*Id*. at 2:44-65.  The specification also provides examples of how to implement such a system using a "prioritizing element" that classifies parts of channel information by assigning coding levels according to the importance of the parts to for link adaptation and how higher and lower priorities can be assigned.  *Id*. at 7:15-8:25, 8:40-48.

In light of the intrinsic record's "guidance to a POSITA as to the meaning of 'importance' and the context for how it is used in the invention[,]" the Special Master rightly concluded that the term "importance," as claimed, does not "improperly depend[] on the subjective perception of the user" but rather "provides an objective meaning for the scope of the term as the factors for reliable link adaptation can be objectively determined."  *Id*. at 48. OnePlus's objections submission fails to show otherwise.

7

Contrary to OnePlus's suggestion (Dkt. 97 at 4, 6-7), there is no hard and fast rule that the term "importance" is "inherently subjective" or "indefinite."  The case law OnePlus cites (which the Special Master already found unpersuasive) is inapposite.  In *Datamize*, the Federal Circuit found the claim term "aesthetically pleasing look and feel" indefinite because the specification failed to provide any standard or guidance for making such a determination, making it "completely dependent on a person's subjective opinion."  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005) ("While beauty is in the eye of the beholder, a claim term, to be definite, requires an objective anchor.").  That is a far cry from making a technical determination of "importance" based on the need to achieve proper link adaptation, with guidance from the '746 patent specification.

In *Crane*, the patent claimed the term "rapidly" (in the phrase "to rapidly and smoothly remove and carry a selected … product"), but without providing any guidance whatsoever in the specification about how fast "rapidly" was.  *Crane Co. v. Sandenvendo Am., Inc.*, No. 2:07-cv-42, 2009 WL 1586704, at *13 (E.D. Tex. June 5, 2009) ("Although Crane suggests that it may be possible to measure the average time of vending machines and then determine a competitively advantageous time, the patent does not disclose any such method.").  In contrast, as the Special Master rightly found, the '746 patent provides an objective basis by which a POSITA can determine "importance"—*i.e.*, priority based on the need to transmit reliably for reliable link adaptation.  *See* Dkt. 91 at 47-48.

Another case on which OnePlus relies, *Uniloc v. Samsung*, is clearly distinguishable. There, the claim term "importance" in one of the asserted claims (claim 8) required an operator to select the "important subject matter" within an image, but the plaintiff conceded that "the importance of the subject matter is subjectively determined by the broadcaster 'to maintain the

8

artistic values of the original image,'" and the specification provided "no objective guidance …
to determine whether the operator has succeeded in doing so."  *Uniloc 2017 LLC v. Samsung
Elecs., Am., Inc.*, No. 2:18-cv-506, 2020 WL 248880, at *19 (E.D. Tex. Jan. 16, 2020).  In
contrast, the claim term "importance" in the '746 patent does not require any subjective artistic
determination like in *Uniloc v. Samsung* or *Datamize*, but rather, as the Special Master correctly
recognized, calls for a technical determination that a POSITA can make objectively based on the
guidance in the specification tying "importance" to the need to transmit the information reliably
to allow for proper link adaptation.  Dkt. 91 at 48.

This case is far more akin to *Uniloc 2017 LLC v. Google LLC*, No. 2:18-cv-492, 2020
WL 569858 (E.D. Tex. Feb. 5, 2020), in which the court found the claim term "importance" not
indefinite where the claims required "assigning an importance" to an element of the claim
(motion vectors) and then taking certain actions "based on the importance," and the specification
disclosed that "the term 'importance' indicates whether a motion vector is likely to be lost during
transmission."  *Id*. at *5.  In finding "importance" sufficiently definite, the court reasoned that
"the term is used consistently in the claims and is intended to have the same general meaning in
each claim" and "the term 'importance,' when read in light of the specification delineating the
patent and the prosecution history, informs, with reasonable certainty, those skilled in the art
about the scope of the invention."  *Id*. at *5.  So, too, here.  The asserted claims of the '746
patent instruct a POSITA to take certain action based on a determination of "importance"
assigned to an element of the claim (parts of channel information) and the specification uses the
term "importance" consistently to guide a POSITA in determining whether parts of channel
information are important for getting the link adaptation to work correctly.

The Court should also reject OnePlus argument that claim 2's "need for a more granular determination of the level of importance" to determine a "lower importance with respect to link adaptation," as opposed to a "binary 'yes/no' decision" on importance, renders "importance" indefinite.  Dkt. 97 at 7.  As the Special Master recognized, "a POSITA would understand that the claimed invention is part of a telecommunications system which [is] designed to operate in variable conditions" and "would realize that the importance of a particular part of the channel information is not absolute across all sets of conditions, but may change[,]" in which case "a POSITA would still be able to determine, for a particular set of conditions, whether a particular part of the channel information is important."  Dkt. 91 at 49.  The Special Master correctly concluded that while "variable conditions … [will] require[] a POSITA to reassess whether part of the channel information is important for each set of conditions[,] … a POSITA would be able to do so" in light of the guidance in the intrinsic record.  *Id*.  OnePlus presents no evidence to the contrary.

In a similar vein, the Court should reject OnePlus's argument that the "'dynamic' assignment of coding levels 'according to a momentary importance'" and "need to 're-assess' infringement" for "variable conditions" and renders the claims indefinite.  Dkt. 97 at 8-9.  Relying on the *Haliburton* and *Versata* cases, OnePlus argues that the patent makes it impossible to make a consistent assessment of infringement because what is "important" can change.  *Id*.  But those cases are inapposite.  The claim at issue in *Halliburton* concerned a "fragile gel" that was supposedly capable of suspending drill cuttings, but it was "ambiguous as to whether an upper bound of fragileness [wa]s contemplated, and … ambiguous as to its requisite ability to suspend drill cuttings."  *Halliburton Energy Servs., Inc., v. M-I LLC*, 514 F.3d 1244, 1256 (Fed. Cir. 2008) (holding claim term indefinite because it was "ambiguous as to the requisite degree of the fragileness of the gel, the ability of the gel to suspend drill cuttings (i.e., gel strength), and/or some

10

combination of the two"). Similarly, the problem in *Versata* was that the patent failed to describe the "outer boundaries" of the term "space-constrained display" or "to establish any boundary enabling a skilled artisan to distinguish between a display that is space constrained from one that is not." *Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 3d 829, 837-38 (W.D. Tex. 2016). Unlike in *Halliburton* and *Versata*, the '746 patent provides a POSITA with sufficient guidance to determine the relative degree of "importance" between parts of channel information for link adaptation, and there is no ambiguity by which "a given embodiment would simultaneously infringe or not infringe" the claims. Dkt. 97 at 9.

In sum, in light of the guidance provided in the intrinsic record, OnePlus cannot satisfy its substantial burden of proving "importance" indefinite by clear and convincing evidence. Beyond attorney *ipse dixit* and inapt case law, OnePlus offers no evidence that refutes the Special Master's well-grounded findings and recommendations.

## B. "Coding Level" Has the Plain and Ordinary Meaning Recommended by the Special Master

The Court should adopt the Special Master's recommendation regarding "coding level" and likewise reject OnePlus's attempt to limit each "coding level" to a "distinct detection probability." Dkt. 91 at 55-58.

Contrary to OnePlus's argument, the Special Master did not "omit[] key lexicographical statements in the intrinsic record establishing that a coding level corresponds to a detection probability." Dkt. 97 at 9 (discussing 2:27-28 and 7:46-50).[2] As an initial matter, OnePlus never argued in its claim construction briefing that these or any other statements in the '746 patent specification reflected the patentee acting as its own lexicographer for "coding level." *See, e.g.*,

---

[2] While not entirely clear from OnePlus's submission, the purportedly omitted "key lexicographical statements" to which OnePlus appears to be referring are the statements from the '746 patent specification at 2:27-28 and 7:46-50. Dkt. 97 at 9. OnePlus's quote from 7:46-50 is actually found at 7:46-48.

Dkt. 31 at 12-16 (discussing general descriptions, embodiments, and goals of assigning a "coding level," but never lexicography); Dkt. 40 at 8-10 (similar). In any event, the Special Master expressly acknowledged those statements from the patent in his Report and Recommendation. *See* Dkt. 97 at 52 (discussing 2:27-28), 54 (discussing 7:38-48), 57 (discussing 7:35-52).

Based on his assessment of the intrinsic record and the parties' respective arguments, the Special Master correctly concluded that the specification makes clear that "'coding levels' and 'detection probability levels[]' … are two separate things[,] [but] Defendant's proposed construction erases this difference." Dkt. 91 at 56; *see* '746 patent at 2:9-14 ("Preferably, each coding level ***corresponds to*** a level of a detection probability of the bit sequence of that coding level." (emphasis added)), 2:18-21 ("Assigning the at least a part of the channel information to the predefined coding level ***allows for*** controlling the detection probability, i.e. a quality of the transmission of the channel information." (emphasis added)), 7:38-48 ("For each coding level 0, … , n, the prioritizing element 37, generates a bit sequence $c_1$, $c_2$, … $c_n$. Each generated bit sequence $c_1$, $c_2$, … , $c_n$ corresponds to the part $ci_1$, $ci_2$ of channel information CI to which the coding level of that bit sequence c1 c2, ... , c, has been assigned. Each coding-level 0, ... , n corresponds to a detection probability level $p_1$, $p_2$, ... , $p_n$."), Fig. 2 (distinguishing between "bit sequences" "$c_1$, $c_2$, $c_n$" and "probability levels" "$p_1$, $p_2$, $p_n$"), 7:53-63 (similar), 10:48-55 (similar); *see also* Dkt. 45 (explaining how claim 2 shows that "coding levels" can have different levels of "detection probability").

OnePlus misplaces its reliance on the *SIPCO* case. Dkt. 97 at 9-10. There, the question was what a "low-power" transceiver was—an issue of degree—but the specification did not indicate what level of power the transceiver could have and still be "low." *SIPCO, LLC v. Emerson Electric Co.*, 939 F.3d 1301, 1308 (Fed. Cir. 2019). In light of that lack of power

information, the Federal Circuit used "transmission range" as a proxy for "power" level, noting that "the specification explicitly ties the low-power transceiver to a limited transmission distance" such that a POSITA "would understand 'low-power' to mean that the transceiver operates at a power level corresponding to 'limited transmission range.'" *Id*. Here, however, the term "coding level" does not present any issue of degree that requires a proxy to understand. Rather, as the Special Master correctly found, OnePlus is improperly trying to constrain the meaning of "coding level" to disclosed embodiments regarding "detection probability." Dkt. 91 at 56.

OnePlus mischaracterizes the holding of the *Howmedica* case. Dkt. 97 at 10. The claim construction question in that case—how to interpret "essentially midway"—presented another issue of degree, and the Federal Circuit had to resort to the disclosed embodiments and goals to determine what the patentee may have meant. *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1320-24 (Fed. Cir. 2016). While the Federal Circuit found those disclosures informative (*id*. at 1322-23), it did not create a rule limiting a patent to an unclaimed element that is found in every disclosed embodiment. Rather, the law remains that "[i]t is … not enough that the only embodiments, or all of the embodiments, contain a particular limitation." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012) ("We do not read limitations from the specification into claims; we do not redefine words. Only the patentee can do that. To constitute disclaimer, there must be a clear and unmistakable disclaimer.").

Furthermore, contrary to its contention (Dkt. 97 at 10), OnePlus's proposed "distinct detection probability" construction is not necessary for the claimed subject matter to achieve the patent's stated goals, nor does a stated goal control claim construction. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1323-24 (Fed. Cir. 2012) (rejecting argument that a purported "object of

the invention" controlled claim construction); *Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1355 (Fed. Cir. 2003) (reversing district court's claim construction that relied on one of the specification's stated "objects of the invention" without a clear disclaimer of particular subject matter).   Brazos is not attempting to "enlarge what is patented beyond what the inventor has described as the invention."  Dkt. 97 at 10 (quoting *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009).  Rather, as the Special Master recognized, the '746 patent describes "coding levels" and "detection probability levels" as "two separate things[,]" and never limits the invention to only a "1:1 correlation between code levels and distinct probability levels[.]"  Dkt. 91 at 56.

Finally, OnePlus's argument about a construction's potential helpfulness to the jury falls flat.  Dkt. 97 at 10-11.  OnePlus's proposed construction is no clearer than the Special Master's recommended construction and, even if it were, that is not a basis to import a "distinct probability level" requirement into the claims.  The Special Master's recommended language— "a parameter that could, but does not necessarily, correlate to a detection probability"—provides a potentially helpful example of what a "coding level" could be used for, without improperly importing "distinct probability level" as a limitation into the claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court should overrule OnePlus's objections to the Special Master's recommendations regarding the disputed claim terms of the '746 patent, and issue an order adopting the Special Master's recommended constructions and rejecting OnePlus's indefiniteness contention.

Dated:  June 28, 2022                    Respectfully submitted,

By: */s/ Jonathan K. Waldrop*
    Jonathan K. Waldrop (CA Bar No. 297903)
    (Admitted in this District)
    jwaldrop@kasowitz.com
    Darcy L. Jones (CA Bar No. 309474)
    (Admitted in this District)
    djones@kasowitz.com
    Marcus A. Barber (CA Bar No. 307361)
    (Admitted in this District)
    mbarber@kasowitz.com
    John W. Downing (CA Bar No. 252850)
    (Admitted in this District)
    jdowning@kasowitz.com
    Heather S. Kim (CA Bar No. 277686)
    (Admitted in this District)
    hkim@kasowitz.com
    ThucMinh Nguyen (CA Bar No. 304382)
    (Admitted in this District)
    tnguyen@kasowitz.com
    **KASOWITZ BENSON TORRES LLP**
    333 Twin Dolphin Drive, Suite 200
    Redwood Shores, California 94065
    Telephone: (650) 453-5170
    Facsimile: (650) 453-5171

    Paul G. Williams (GA Bar No. 764925)
    (Admitted in this District)
    pwilliams@kasowitz.com
    **KASOWITZ BENSON TORRES LLP**
    1230 Peachtree Street N.E., Suite 2445
    Atlanta, Georgia 30309
    Telephone: (404) 260-6080
    Facsimile: (404) 260-6081

    Hershy Stern (NY Bar No. 4631024)
    (Admitted *pro hac vice*)
    hstern@kasowitz.com
    Howard L. Bressler (NY Bar No. 2487379)
    (Admitted *pro hac vice*)
    hbressler@kasowitz.com
    Joshua A. Whitehill (NY Bar No. 4766473)
    (Admitted *pro hac vice*)
    jwhitehill@kasowitz.com
    Noah P. Dorman (DC Bar No. 1779821)
    (Admitted *pro hac vice*)
    ndorman@kasowitz.com
    **KASOWITZ BENSON TORRES LLP**
    1633 Broadway

New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Mark D. Siegmund (TX Bar No. 24117055)
mark@swclaw.com
**STECKLER WAYNE CHERRY & LOVE
PLLC**
8416 Old McGregor Road
Waco, TX 76712
Telephone: (254) 651-3690
Facsimile: (972) 387-4041

Gregory Phillip Love (TX Bar No. 24013060)
greg@swclaw.com
**STECKLER WAYNE CHERRY & LOVE
PLLC**
107 East Main Street
Henderson, TX 75652
Telephone: (903) 212-4444
Facsimile: (903) 392-2267

**ATTORNEYS FOR PLAINTIFF
WSOU INVESTMENTS, LLC
d/b/a BRAZOS LICENSING AND
DEVELOPMENT**

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on June 28, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Jonathan K. Waldrop*
**Jonathan K. Waldrop**

17