# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU Investments LLC doing business as Brazos Licensing and Development, § § § § § § § § § § § | |
| Plaintiffs, | Civil Action No. 6:20-cv-00957-ADA<br>Civil Action No. 6:20-cv-00958-ADA |
| v. | |
| OnePlus Technology (Shenzhen) Co., Ltd., | Jury Trial Demanded |
| Defendant. | |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S OBJECTIONS TO
SPECIAL MASTER'S REPORT AND RECOMMENDATION
REGARDING CLAIM CONSTRUCTION
(GROUP II PATENTS)**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. U.S. PATENT NO. 7,477,746 ("THE '746 PATENT")..................................................... 1

    A. "Importance" Renders Claims 1, 2 and 11 (and claims dependent thereon) Indefinite ............................................................................................................... 1

    B. "Coding Level" Must Include A Distinct Detection Probability ........................... 5

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Lab'ys v. Sandoz, Inc.*,
    566 F.3d 1282 (Fed. Cir. 2009) ................................................................................................7

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005) .............................................................................................2, 4

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244, 1251 (Fed. Cir. 2008) ......................................................................................4

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
    822 F. 3d 1312 (Fed. Cir. 2016) ...............................................................................................7

*Uniloc 2017 LLC v. Google LLC*,
    No. 218CV00492JRGRSP, 2020 WL 569858 (E.D. Tex. Feb. 5, 2020) ..................................4

*Uniloc 2017 LLC v. Samsung Elecs. Am., Inc.*,
    No. 2:18-CV-00506-JRG, 2020 WL 248880 (E.D. Tex. Jan. 16, 2020) ..............................2, 3

I.      **INTRODUCTION**

Defendant OnePlus Technology (Shenzhen) Co., Ltd. ("Defendant" or "OnePlus") respectfully submits its reply to WSOU's Response to OnePlus's Objections to the May 24, 2022 Special Master's Report and Recommendation Regarding Claim Construction ("Rep.").[1]

II.     **U.S. PATENT NO. 7,477,746 ("THE '746 PATENT")**

There are three terms at issue with respect to the '746 patent – terms five, six, and seven. *See* Rep. at 33-44. The disputed terms, OnePlus' proposed constructions, and the Special Master's Recommended Constructions, are provided in the table below:

| Term | OnePlus's Proposed Construction | Special Master's Recommended Construction |
|---|---|---|
| "an importance of parts of channel information for the link adaptation" (claim 1, 11) | Indefinite. | Not indefinite. Plain-and-ordinary meaning. |
| "a lower importance with respect to link adaptation than said at least one part" (claim 2) | Indefinite. | Not indefinite. Plain-and-ordinary meaning. |
| "a coding level of said multi-level coding" / "coding level" (claims 1, 2, 3, 11) | "a distinct detection probability level" | Plain and ordinary meaning. |

A.      **"Importance" Renders Claims 1, 2 and 11 (and claims dependent thereon) Indefinite**

In its initial arguments to the Special Master and in the pending objections, OnePlus demonstrated that the term "importance" renders the claims indefinite for two reasons. *First*, as used in the claims of the '746 Patent, the "importance" term requires a subjective determination of relative importance based on the intent of the user. WSOU cannot *post-hoc* resuscitate these claims by rewriting the scope to only cover what is objectively important to "reliability" and, even if it could, the claims would still require subjective analysis. *Second*, even if the claims

---

[1] Dkt. 92 in the -957 Case, Dkt. 91 in the -958 Case.

were limited to objective-importance-for-reliability, WSOU admits that infringement could not be assessed with reference to the accused products alone, but only on an ongoing basis *in situ* during their use, rendering the claim indefinite under *Halliburton*.

1. "Importance" Is Subjective and Renders The Claims Indefinite

WSOU concedes that under *Datamize* and related cases, the term "importance" will render a claim indefinite if it requires a subjective analysis of the intent of an alleged infringer or other user, rather than an objective assessment of the accused device. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350-52 (Fed. Cir. 2005) (finding claims indefinite because the patentee's construction improperly depended on the subjective perception of the user); *Uniloc 2017 LLC v. Samsung Elecs. Am., Inc.*, No. 2:18-CV-00506-JRG, 2020 WL 248880, at *16-18 (E.D. Tex. Jan. 16, 2020) (holding claims indefinite where "the 'partition of important subject matter' [was] subjective, because it requires a broadcaster to act on the 'importance' of the partition").

To avoid indefiniteness, WSOU argues that "importance" is not subjective, but instead "is determined based on whether the particular channel information needs to be transmitted **reliably** for the link adaptation to work correctly." Resp. at 6 (emphasis added). But this "reliability" standard is not found anywhere in the claims.[2] Instead, WSOU cherry-picks from certain preferred embodiments in the specification that discuss reliability. *Id.* at 6-7. But as WSOU itself argues, "'[i]t is … not enough that the only embodiments, or all of the embodiments, contain a particular limitation'" for it to be read into the claims. *Id.* at 13, *quoting Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012). There is

---

[2] In fact, WSOU opposes adding any measure of reliability to the claims by objecting to OnePlus's proposed construction of "coding levels" as distinct detection probabilities. *See* Obj. at 5.

no lexicographical statement or other language in the intrinsic record that limits "importance" to merely importance-for-signal-reliability.

Moreover, WSOU ignores several embodiments where signal reliability is not of prime importance. WSOU concedes that the patent specification also discloses that user-driven objectives, like a desire for "high user speed" may determine what information is "important" and should be prioritized. Obj. at 4; Lyons Decl. Ex. 3 ('746 patent) at 4:2-4, 4:27-30.

OnePlus also explained—and WSOU did not rebut—that even if "importance" were tethered to "reliability," the patent does not outline an objective hierarchy of what types of channel information should be prioritized in order to ensure signal reliability. Obj. at 7-8 Accordingly, even under WSOU's improperly narrow interpretation of "importance" as "importance-to-reliability," a subjective assessment would still be necessary. For example, the patent teaches one embodiment where a particular part of channel information is "assigned statically." Lyons Decl. Ex. 3 at 2:66-67. But the patent also teaches that the relative importance of channel information to signal reliability, for instance the importance of "wideband" or "sub-band" information, can change dynamically. *Id.* at 3:28-41. This creates a dilemma for the static embodiment, *e.g.,* that always prioritizes "wideband" over "sub band" information: the only way to assess whether that prioritization has been made based on "an importance" of the information to signal reliability, as opposed to some other factor like user speed, battery life, or anything else, is to ask the product designer. This is the sort of subjective inquiry that led to an indefiniteness finding in *Uniloc v. Samsung*, 2020 WL 248880, at *16-18.

The *Uniloc v. Google* case relied on by WSOU is distinct from the present situation. In that case, the court found that the "important" term was defined in the specification and adopted a construction narrowing the scope of the claims. *Uniloc 2017 LLC v. Google LLC*, No.

218CV00492JRGRSP, 2020 WL 569858, at *7 (E.D. Tex. Feb. 5, 2020).  Here, by contrast, neither the parties nor the Special Master have argued that there is sufficient language in the specification to limit "importance" beyond its plain and ordinary meaning.

Finally, as shown above, OnePlus' argument is firmly grounded in the specification and is not, as WSOU repeatedly contends, "attorney *ipse dixit*."  Resp. at 6, 11.  There is also not, as WSOU suggests (Response at 6), any requirement to introduce expert testimony to support a finding of indefiniteness.  *See Datamize*, 417 F.3d at 1346-47 (affirming a district court finding of indefiniteness where "the district court rejected expert testimony offered by [Plaintiff]" noting "expert testimony is disfavored and cannot vary or contradict claim language").

        2.    <u>"Importance" Cannot Be Reasonably Determined, Rendering The Claim Indefinite</u>

WSOU contends that the specification provides "sufficient guidance to determine the relative degree of 'importance' between parts of channel information for link adaptation." Resp. at 11.³  But that is not enough.  *Halliburton* explains that "[e]ven if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into ***meaningfully*** precise claim scope."  *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008).  In *Halliburton*, the claims fell short of this standard because environmental conditions dominated the infringement analysis and a skilled artisan could not determine whether an accused product infringed from one location to another without an analysis of site conditions at the time of alleged infringement.  *Id.* at 1254-55 ("[U]nder Halliburton's proposed construction in this case, an artisan would not know from one well to the next whether a certain drilling fluid was within the scope of the claims because a wide

---

³ As noted above, WSOU is wrong, and tellingly, WSOU does not propose a construction enunciating such guidance.  Regardless, as discussed *infra*, the claim is still indefinite under *Halliburton*.

variety of factors could affect adequacy.") Accordingly, **"[w]hen a proposed construction requires that an artisan make a separate infringement determination for every set of circumstances in which the [accused product] may be used, and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that construction is likely to be indefinite."** *Id.* at 1255.

The parties and the Special Master agree that "'variable conditions … [will] require[] a POSITA to reassess whether part of the channel information is important for each set of conditions[.]'" Response at 10 (quoting Report and Recommendation at 49). This requirement for a constant reassessment places the patent claims squarely within the zone of ambiguity prohibited by *Halliburton*. The claims should therefore be found indefinite.

### B. "Coding Level" Must Include A Distinct Detection Probability

WSOU ignores clear statements in the specification that establish a one-to-one relationship between "coding levels" and a detection probability. Specifically, in describing the invention, the specification expressly links coding levels to detection probability. Lyons Decl. Ex. 3 at 2:27-28 ("a robust coding level (**i.e.**, high detection rate)") (emphasis added). This statement was not made in the context of a particular embodiment, but rather, is a general explanation of what coding levels are.

All of the portions of the specification that WSOU cites actually confirm that a coding level comprises a distinct detection probability:

| Cited Language | Discussion |
| --- | --- |
| "Preferably, each coding level corresponds to a level of a detection probability of the bit sequence of that coding level" (*id.* at 2:9-14); | This confirms that coding levels must include a detection probability. If a coding level lacked a distinct detection probability, it would not "correspond[] to a level of a |

| | detection probability" of the associated "bit sequence." |
|---|---|
| "Assigning the at least a part of the channel information to the predefined coding level allows for controlling the detection probability, i.e. a quality of the transmission of the channel information" (*id.* at 2:18-21); | A coding level that comprises "a distinct detection probability" enables (*e.g.,* "allows for") the "coding level … controlling the detection probability." |
| "For each coding level 0, … , n, the prioritizing element 37, generates a bit sequence $c_1, c_2, … c_n$. Each generated bit sequence $c_1, c_2, … , c_n$ corresponds to the part $c_{i1}, c_{i2}$ of channel information CI to which the coding level of that bit sequence $c_1 c_2, ... , c$, has been assigned. Each coding-level 0, ... , n corresponds to a detection probability level $p_1, p_2, ... , p_n$." (*id.* at 7:38-48); | This passage concedes "Each **coding-level … corresponds to a detection probability level** $p_1, p_2, … p_n$" (i.e., a "distinct detection probability"). |
| '746 Patent Fig. 2. | Figure 2 indicates that each coding levels $c_1$-$c_n$ are related to a desired detection probability level. *See also id.* at 7:38-48 discussed *supra*. |
| "In an embodiment, the channel information CI may be subdivided such that part $c_i$, is more important with respect to link adaptation than part $c_j$, if and only if i<j. In this embodiment, the coding level i may be assigned to the part $c_i$, such that the part $c_i$, corresponds to the bit sequence c." (*id.* at 7:53-57) | This discussion is in the context of 7:46-48, stating "Each coding-level … corresponds to a detection probability level $p_1, p_2, … p_n$" |
| *Id.* at 10:48-55 (Chart): | This chart is preceded with the text "**A coding level having a high detection probability** |

| | |
|---|---|
| | **level** p is assigned to the channel information (e.g. the coarse precoding vector). **A coding level having a low detection probability level** p<p is assigned to the payload sequence d," (10:43-48 (Emphasis added)) confirming that coding levels used in the chart include distinct detection probabilities. |

| part of information | bit sequence | detection probability level | content |
|---|---|---|---|
| $ci_1$ | $c_1$ | $p_1$ (high) | coarse precoding vector |
| d | $c_2$ | $p_2$ (low) | payload |

Accordingly, the observation that detection levels can exist separately from coding levels is not contrary to the fact that, as used in the '746 Patent, coding levels *always* are associated with detection probabilities. In light of this, and because WSOU has not articulated any other way the claims can achieve the goal of prioritizing important information, "coding level" must be construed as comprising "a distinct detection probability." *See Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F. 3d 1312, 1321-22 (Fed. Cir. 2016); *Abbott Lab'ys v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009).

      Finally, while OnePlus' proposed construction is grounded in the specification, the construction promoted by WSOU—"[p]lain-and-ordinary meaning wherein the plain-and-ordinary meaning is 'a parameter that could, but does not necessarily, correlate to a detection probability'" is completely untethered from the specification. WSOU concedes that "coding level" has no plain and ordinary meaning for a lay jury, so some construction is needed. WSOU tries to defend its pending construction noting it "provides a potentially helpful example of what a 'coding level' could be used for." Resp. at 14. But this example is not at all "helpful" because it provides the jury with no way to identify what else might constitute a "coding level." The generic term "parameter"—which is essentially WSOU's construction of "coding level"— provides the jury with no guidance as to what this element means or what it covers. WSOU's proposed construction should be rejected.

| | |
|---|---|
| Dated: July 12, 2022 | /s/ *Michael J. Lyons* <br> Michael J. Lyons* <br> California Bar No. 202284 <br> michael.lyons@morganlewis.com <br> Ahren C. Hsu-Hoffman <br> Texas Bar No. 24053269 <br> Ahren.hsu-hoffman@morganlewis.com <br> Jacob J.O. Minne* <br> California Bar No. 294570 <br> jacob.minne@morganlewis.com <br> Austin L. Zuck* <br> California Bar No. 318434 <br> austin.zuck@morganlewis.com <br> **MORGAN, LEWIS & BOCKIUS LLP** <br> 1400 Page Mill Road <br> Palo Alto, CA 94304 <br> T: 650.843.4000 <br> F: 650.843.4001 <br><br> Elizabeth M. Chiaviello <br> Texas Bar. No. 24088913 <br> elizabeth.chiaviello@morganlewis.com <br> **MORGAN, LEWIS & BOCKIUS LLP** <br> 1717 Main Street, Suite 3200 <br> Dallas, TX 75201 <br> T: 214.466.4000 <br> F: 214.466.4001 <br><br> *Admitted pro hac vice* <br><br> ***Attorneys for Defendant OnePlus Technology (Shenzhen) Co. Ltd.*** |

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on July 12, 2022, a true and correct copy of the foregoing document was served electronically on counsel of record via the Court's CM/ECF system per Local Rule CV-5.

*/s/ Michael J. Lyons*
Michael J. Lyons
